McKenzie et al., Plaintiffs in Error, v. The Denver Times Publishing Company, Defendant in Error.

1. Libel.

The publication of words concerning merchants and traders which impute to them insolvency, financial difficulties or embarrassment, dishonesty or fraud, are actionable in themselves, without the necessity of alleging or proving special damages.

2. Same.

The publication of the words "Business Changes—McKenzie Lumber Company, Denver, Attached," is libelous *per se.*

3. Pleading—Innuendo.

When the words published explain themselves, an innuendo is unnecessary.

*Error to the District Court of Arapahoe County.*

Messrs. Reddin & O'Hanlon, for plaintiffs in error.

Messrs. Benedict & Phelps, for defendant in error.

Thomson, J., delivered the opinion of the court.

This is an action for libel, brought by McKenzie and Leopold against The Denver Times Publishing Company. The complaint charges that the plaintiffs were copartners, doing business in Denver, Colorado, under the firm name of The McKenzie Lumber Company, as lumber merchants and tradesmen, engaged in buying and selling lumber at wholesale and retail, in the state of Colorado, and other states and

territories : that the defendant was a corporation, organized under the laws of the state of Colorado, and, as such, was the publisher and proprietor of *The Denver Times*, a daily newspaper published in Denver, and of general and large circulation in Colorado, and other states and territories : that on the 22d of September, 1891, the defendant published in its said newspaper, of and concerning the plaintiffs in their trade and business, the following false and libelous matter :

"*Business Changes—McKenzie Lumber Company, Denver, Attached.*"

There was no allegation of special damage.

When the case came on for trial, the plaintiff McKenzie was sworn as a witness, and had testified to the copartnership and business of the plaintiffs, when the defendant interposed a motion to exclude all further evidence for the plaintiffs, on the ground that the complaint did not state facts sufficient to constitute a cause of action, because the words, set forth, were not libelous *per se ;* and, no special damage being alleged, the plaintiffs were not entitled to a recovery. The court sustained the motion, and instructed the jury to render their verdict for the defendant, which was done accordingly.

The ruling of the court in sustaining the motion and giving the instruction presents the only question which we are called upon to determine in the case. Were the published words actionable *per se ?* We are of the opinion that they were. The law has special regard for the credit of merchants and traders ; and words which impute to them insolvency, financial difficulty or embarrassment ; or dishonesty or fraud, are actionable in themselves, without the necessity of alleging or proving special damages. Upon this proposition the authorities are unanimous. Townshend on Slander and Libel, 273, 276 ; Newell on Slander and Libel, 192, 195 ; Odgers on Libel and Slander, 30.

The courts in a variety of instances have applied this general doctrine to particular cases, a few of which we shall notice.

The words, " Joseph Hermann, brickmaker, is in the hands of the sheriff," were held actionable *per se*. *Hermann v. Bradstreet*, 19 Mo. App., 227.

In *Mott v. Comstock*, 7 Cowen, 654, the defendant, speaking of a certain sum of money then due and owing from the plaintiff, a merchant, to one Matthew Harris, said, " There is poor Harris, it is hard for him to lose his debt." These words were held actionable by the court, as implying that the plaintiff was insolvent and unable to pay the debt.

To say of a trader that his checks were dishonored is actionable.    Townshend on Libel and Slander, 275.

In *Sewall v. Catlin*, 3 Wend. 292, the following words, spoken of the plaintiffs as merchants in answer to the question " Were there any failures yesterday ? " " Not that I know of ; but I understand there is trouble with the Messrs. Sewalls," were adjudged to be libelous *per se*. The learned judge, delivering the opinion of the court, says: " I am inclined to think the words were actionable in themselves, being spoken of the plaintiffs as merchants. The witness inquired of the defendant, ' if there were any failures yesterday ; ' to which he replied, ' Not that I know of, but I understand there is trouble with the Messrs. Sewalls.' This answer in connection with the interrogation, was most obviously calculated to convey an injurious impression in relation to the mercantile standing and credit of the plaintiffs. The witness had heard of no failures, but he had heard that the Sewalls were in trouble. Every person would understand from this expression, when used in reply to such a question, that the Sewalls were embarrassed, were very hardly pressed, and would probably fail, and such was the sense in which the witness understood them. Any words which in common acceptance imply a want of credit or responsibility, when spoken of a merchant, are actionable."

In this case, the words complained of are, " *Business Changes—McKenzie Lumber Company, Denver, Attached.*" What is the plain inference from this language ? It is that a suit has been brought against the plaintiffs upon a partner-

ship liability, a writ of attachment issued in the case, and the property of the firm seized under the writ. The impression produced upon the mind of the general reader, would be that The McKenzie Lumber Company had contracted an indebtedness which it was unable or unwilling to pay. The language tends to impeach the solvency of the firm, or its integrity, or both, and is calculated to produce an impression unfavorable to the business reputation of the plaintiffs. Words of similar import have been held actionable when spoken merely, and their circulation therefore restricted ; but when they are printed in a newspaper with the wide and general patronage of the Denver Times, they must of necessity be much more injurious.

The case of *Woodruff v. Bradstreet*, 116 N. Y. 217, is cited by defendant's counsel, as announcing a rule which should be applied to this case ; and, tested by which, the words under discussion here would not be libelous, *per se*. That was an action for libel, founded upon the publication by the defendant of the following :

" Watertown.—Robinson, J. S., printer, binder and mfr., woolens. Judgment against him and C. T. Woodruff, $4,000."

The court, in discussing the effect of these particular words, say :

" The recovery of a judgment does not necessarily import conceded default in payment of a debt. It is a matter of frequent observation that controversies, arising apparently out of an honest difference of opinion, go into the courts for determination. Litigation also not infrequently comes from causes in which is involved no personal credit or default. There is nothing in the defendant's report to indicate that the judgment was produced by any cause prejudicial to the credit of the plaintiff, and there is no presumption in that respect upon the subject in aid of the action."

But the court in speaking on the general doctrine applicable to such cases uses this language :

" The plaintiff was engaged in the business of manufacturing and selling brick in the city of Watertown. It must be

assumed that at the time of the publication he was in good financial and business standing, and that the publication as to him was false. His reputation in that respect was his property, and he had the right to its protection against defamation. And any published imputation against him in that relation, which could be so construed as to import insolvency, or a condition of financial embarrassment, would be ground for an action, because it is the policy of the law to afford protection to the credit of merchants and traders, for reasons which it is now unnecessary to repeat."

There is a manifest difference between that case and this. There is no necessary inference from the language which was the subject of that suit, that the judgment was on account of a default in the payment of a debt. To say that a judgment has been recovered against a man, without more, suggests no impugnment of his solvency or his integrity; and the plain sense of the words cannot be enlarged by innuendo. In this case, however, the words clearly imply embarrassment in the plaintiffs' partnership business. They will bear no other construction. If they convey the truth, there must have been a suit against the firm; the suit must have been brought upon an alleged firm liability; and the property of the firm must have been taken in attachment. Not only is suspicion cast upon the solvency or integrity of the firm, but its property, which, together with its reputation, is the foundation upon which its credit rests, is said to be in the custody of an officer. The words in question explain themselves, and innuendo was unnecessary. If their natural tendency was not to impair the credit of the plaintiffs, we are at a loss to conjecture what language would have that effect. The words are clearly actionable, and for the purpose of maintaining the suit it was unnecessary to allege or prove special damages. It was therefore error to exclude the evidence of plaintiffs and instruct the jury to find a verdict for the defendant.

The judgment will be reversed.

*Reversed.*